FRED HURST v. THE STATE.

No. 1406. Decided June 25, 1898.

Motion for Rehearing Decided April 19, 1899.

1. **Exception to Evidence Contained in Statement of Facts Filed After Adjournment.**

Where the exceptions to evidence are not presented in separate bills, but are only embodied in a statement of facts which was filed on a ten-day order after adjournment of court, they can not be considered. Bills of exception to evidence must be filed during the term.

**2. Manslaughter—Adequate Cause—Charge.**

On a trial for murder, there was no error in a charge upon manslaughter which instructed the jury, "But an assault and battery committed upon the slayer by deceased prior to the difficulty, and which occurred a sufficient length of time before the killing for a person of ordinary temper to become capable of cool reflection, would not be an adequate cause."

**3. Same—"Person of Ordinary Temper"—Insanity.**

Our statute, Penal Code, article 700, defining "adequate cause," limits the passion to a person of "ordinary temper," and has no reference to the particular idiosyncracies or infirmities that may exist in particular individuals. Hence, where the defense was insanity, and the charge of the court correctly and fully submitted that issue, it was proper, as to the issue of manslaughter, to direct the jury to regard defendant as a person of "ordinary temper," both as to the condition of his mind under which the passion was engendered, and its continuation.

**4. Emotional Insanity—Charge.**

The test of insanity is confined by our decisions to the capacity of the accused to distinguish between the right and wrong of the particular act committed; and the court is not required to charge upon emotional insanity, and especially so where there is nothing in the testimony indicating that the defendant was incapable, on account of defect of understanding, of knowing that the act he was doing was wrong, or if he did know it, that he was driven to its commission by an irresistible impulse, over which he had no control, superinduced by insanity.

ON MOTION FOR REHEARING.

**5. Insanity—Preponderance of Evidence—Charge of Court.**

On the issue of insanity, the court has performed its full duty by instructing the jury that it is only sufficient that the defendant establish this defense by a preponderance of evidence, and that it is not necessary for him to prove it beyond a reasonable doubt. "Clearly proved," in this connection, means only that the defense should be established by a preponderance of testimony.

**6. Emotional Insanity—Irresistible Impulse—Charge.**

On a trial for murder, HENDERSON, Judge, is of the opinion that if there be any tangible testimony raising the issue of irresistible impulse, a charge of court should in effect submit the issue that, though the accused may have known the right or wrong of the particular act, yet if he was impelled to its commission by an insane, irresistible impulse, he could not be held responsible, and should be acquitted.

BROOKS, J., dissenting, does not agree to the doctrine of irresistible impulse, under any circumstances.

DAVIDSON, P. J.—It is not necessary to charge upon irresistible impulse when insanity is at issue.

APPEAL from the District Court of Ellis. Tried below before Hon. J. E. DILLARD.

Appeal from a conviction for murder in the second degree; penalty, five years imprisonment in the penitentiary.

The indictment charged appellant with the murder of William Thaison by shooting him with a pistol on the 16th day of April, 1896.

This is a second appeal in the case. For former appeal see 40 Southwestern Reporter, 264.

The record on this appeal is quite voluminous, but the salient features of the evidence are clearly summarized in the original opinion below.

*K. R. Craig,* for appellant, filed an able brief and argument, in which he attacked the charge of the court upon its submission of the issues of manslaughter and insanity. [The brief on motion for rehearing has not come to the hands of the Reporter.]

*Mann Trice,* Assistant Attorney-General, for the State.

HENDERSON, JUDGE.—Appellant was convicted of murder in the second degree, and his punishment assessed at confinement in the penitentiary for a term of five years; hence this appeal.

This case was before this court on an appeal from a former trial of the case, and was reversed and remanded. See 40 S. W. Rep., 264. Insanity was set up as a defense in that case, and the facts attending the killing and the evidence regarding insanity were substantially the same, except in the present case more testimony was introduced on behalf of the defendant tending to show insanity. A number of bills of exception were taken by appellant to the action of the court in the admission and exclusion of testimony; but these bills only appear in the statement of facts, and the statement of facts was filed under a ten-day order, after the adjournment of the court. Consequently they can not be considered. The only questions presented that require consideration at our hands are with reference to the action of the court in giving and withholding certain requested charges, presented in the motion for a new trial.

Appellant objected to the court's charge on manslaughter, which is as follows: "But an assault and battery committed upon the slayer by deceased prior to the difficulty, and which occurred a sufficient length of time before the killing for à person of ordinary temper to become capable of cool reflection, would not be an adequate cause." This was objected to on the ground "that the testimony in the case made it an issue of facts whether the defendant was a man of ordinary temper, and on the question of manslaughter the question to be determined was whether the defendant had in fact recovered from the attack made on him, and was at the time of the shooting in fact capable of cool reflection. It being the actual condition of the defendant's mind, as a fact, at the time of the shooting, the court should not have confined the jury to the consideration of what ought to have been the condition of some ideal person, but the jury should have been permitted to determine the question of fact involved upon the testimony before them." We understand the objection urged to this portion of the charge was because it instructed the jury to consider appellant, with reference to manslaughter, as a person of ordinary temper. This is but the language of our statute on the subject. Article 700, Penal Code, is as follows: "By the expression 'adequate cause' is meant such as would commonly produce a degree of anger, rage, resentment or terror in a person of ordinary temper sufficient to render the mind incapable of cool reflection." Now, if the adequate cause is by express law addressed to a person of ordinary temper (that is, if the passion to be aroused or engendered is to be so aroused or engendered in a person of ordinary temper), then it follows that the passion aroused, as to its continuance, must refer to a person of ordinary temper. The law in this respect puts every person on the same basis, and, as to the adequate cause, refers to the ideal person, to wit, the person of ordinary temper, and has no reference to the peculiar idiosyncra-

sies or infirmities that may exist in particular individuals. Appellant here insists that he could not be regarded as a person of ordinary temper, because he introduced proof of insanity, and that consequently, as to manslaughter, the ideal standard erected by the law was erroneous as to him. As to this, we would say that he had the full benefit thereof in the charge presenting that phase of the case; and if, under the evidence and charge of the court, the jury believed him insane, they were directed to acquit him altogether. As to manslaughter, they were simply directed to put him on the plane of an ordinary person; that is, they were directed to regard him as a person of ordinary temper, both as to the condition of his mind under which the passion was engendered, and of its continuation. This we understand to be the plain letter of the statute. We do not understand other portions of the charge on manslaughter to be objected to, nor any other grounds, save those mentioned, to be urged to the charge of the court on manslaughter; and so we are circumscribed to the charge quoted, and we have discussed the same above, and see no error.

Appellant objects to the court's charge on insanity, and to the refusal of the court to give certain requested charges on that subject. The court's charge on this subject is as follows: "Among other defenses made in this case is that of insanity. You are charged that only a person with a sound memory and discretion can be held punishable for a homicide, and that no act done in a state of insanity can be punished as an offense. Every man is presumed to be sane until the contrary appears to the jury trying him. He is presumed to entertain, until this appears, a sufficient degree of reason to be responsible for his acts; and, to establish a defense on the grounds of insanity, it must be clearly proved that at the time of committing the act the party accused was laboring under such defect of reason, from the disease of the mind, as not to know the nature or quality of the act he was doing, or, if he did know that, he did not know that he was doing wrong,—that is, that he did not know the difference between the right and the wrong as to the particular act charged against him. The insanity must have existed at the very commission of the offense, and the mind must have been so dethroned of reason as to deprive the person accused of a knowledge of the right and wrong as to the particular act done. You are to determine from the evidence in this case the matter of insanity,—it being a question of fact,— controlled, so far as the law is concerned, by the instructions herein given you." Appellant contends that this charge erects the single standard, to wit, that if appellant, at the time he committed the act, knew the difference between the right and wrong thereof, he was sane; if he did not know it, he was insane. It is urged that this charge was defective, because this test was too circumscribed, in that it utterly ignored emotional insanity, or the inability of appellant to control his will power, on account of his insanity. Appellant asked the court to give the following additional charge: "The responsibility of the defendant on his plea of insanity may be determined by inquiring: (1) Did the defend-

ant have sufficient mental capacity to appreciate the nature of the particular act of killing at the time it was done, or did he have sufficient mental capacity to know the right or wrong of the particular act at the time, and under the circumstances? and (2) did he know that he was doing wrong in killing William Thaison at the time, and under the circumstances? and (3) had he sufficient mental capacity and will power to choose whether he would or would not kill William Thaison at the time he did kill him? All these questions must be determined in the affirmative in order to hold defendant responsible for the killing charged in the indictment; and if you, from the evidence, find a negative answer to either one of said questions, you should acquit him (the defendant)." This charge the court refused to give, and the appellant assigns this action of the court as error. Appellant, in this connection, refers us to Leache v. State, 22 Texas Criminal Appeals, 279, and insists that this court has heretofore laid down the rule on this question, embracing the test embodied in his special requested instructions: that is, that said test embodies, not only the right and wrong test, but also the capacity and will power on the part of a person affected with insanity to restrain his actions. An examination of that decision appears to lay down the test suggested by appellant, in addition to the test of capacity, to distinguish between the right and wrong of the particular act. But subsequent decisions of the court appear to confine this question to the capacity to distinguish between the right and wrong of the particular act. Mr. Bishop, in treating of this question, appears to adopt the view suggested in the Leache case; that is, viewing the question from a practical standpoint, there is such a thing as emotional insanity,—that is, some insane persons may be capable of reasoning, and knowing that the particular act done by them is wrong, and yet their will power is overcome, and they are driven by an irresistible impulse to the commission of the act. See 1 Bish. Crim. Law, secs. 383b-387, inclusive. However, it is not necessary for us to discuss the question here, as in our view of the case it does not become material. We understand that the peculiar insanity claimed for appellant here was that he was afflicted with insanity, or an impairment of his intellectual faculties, superinduced by masturbation, and that it manifested itself in the delusion that women he saw became infatuated with him, and he ultimately formed the idea that a certain woman in Memphis, Tenn., was pursuing him, and that she was devising plans for his destruction, etc. Now, so far as we are enabled to discover from the record, the homicide in this case has no connection with the said monomania or delusion. It is true, the books teach that a person afflicted with monomania suffers frequently a general impairment of the intellect, and he may be otherwise insane, but we see nothing in this case that indicates a general breaking down or impairment of the faculties. Doubtless, from self-abuse the intellect of appellant had become more or less weakened, and he was thus rendered morbidly sensitive, and liable to take offense in regard to matters that would not thus affect one whose faculties were entirely normal and healthy. But there is nothing sug-

gesting that his will power was broken down, or that, conceding he was capable of determining the right and wrong of a particular thing, he had lost control of his will power, and was incapable of resisting an impulse to do the wrong.   The record, to our minds, suggests an ordinary killing, predicated on an affront and an assault made on him by the deceased on the day of the homicide, and an hour or two before it occurred.   Appellant, it appears, was intermeddling with the engine or machinery used at the brick kiln where he was at work, against the orders of the deceased, who was the superintendent.   The deceased told him he had no right to be meddling with the machinery.   Defendant replied that he had given him authority to attend to the engine and watch everything, and everything he saw loose to tighten up.   Deceased told him that he had not done so.   Appellant told him he was a liar, or a "damn liar;" that he had told him more times than once.   Deceased in the meantime had taken the wrench out of the defendant's hand, or defendant had given it to him; and when he called Thaison a liar the latter jumped and caught appellant by the throat with his left hand, and backed him around the boiler or water pipe, and he raised the monkey wrench over the appellant's head, and threatened to knock his brains out with it.   He held him there about a half minute, and then let him go, and told defendant to go to the office and get his money and leave.   Appellant left, went up to the little town, got a pistol, loaded it, and came back about an hour afterwards, walked up to where deceased was, and shot him in the back. He made no effort to escape, but subsequently gave himself up, or was arrested by the officer in town.   These are substantially the circumstances attending the killing.   There is nothing extraordinary in the circumstances connected with this homicide.   Appellant had a motive, which he appears to have acted upon, much in the same manner in which hundreds of other homicides have occurred.   We fail to find anything in the testimony indicating that appellant was not capable, on account of defect of understanding, of knowing that the act he was doing was wrong, or, if he did know it, that he was driven to its commission by an irresistible impulse over which he had no control, superinduced by insanity.   It occurs to us that, if he was insane at all, it was on account of the infirmity of his mind, which rendered him incapable of reasoning and knowing that the act he was then doing was wrong.   This issue was fairly submitted to the jury, and we do not understand that any complaint is made in regard to its submission, but the charge is criticised only because the court did not give, in this connection, emotional insanity.   As stated, we disagree with counsel in this contention.   The judgment is affirmed.

*Affirmed.*

## ON MOTION FOR REHEARING.

HENDERSON, JUDGE.—This case was affirmed at the last Austin term of this court, and now comes before us on motion for rehearing.

Appellant strenuously insists that the action of the court in affirming

this case was erroneous: First, because the court entirely failed to charge on that phase of insanity involving appellant's control of his will power,—that is, emotional insanity; second, because the court instructed the jury that, before the plea of insanity could avail defendant, it must be clearly proved. And in this connection he urges that the court misunderstood the testimony in reference to the manner in which the killing was done; that the court was in error in stating that there was no apparent connection between the act of killing and the insanity proven. In connection with this matter, we would further remark that counsel has called our attention to certain testimony which he claims directly connects the killing with the insanity proven, to wit: That T. W. Hurst, the father of appellant, in his testimony, states that after the difficulty between appellant and deceased at the engine, appellant came to him at his office for a settlement, and asked for his time. As he started to leave, he remarked, "That woman has hired Thaison to persecute me." This was about an hour before the shooting. After the shooting, and after appellant was placed in the calaboose, his father called on him; and further testified that appellant again talked to him about the Memphis woman, "and that he was induced to give her name at the calaboose by telling him we would go to Memphis, and do something to prevent her from interfering with him any further, and he wanted us to go there and frighten her away." Appellant further remarked to witness, "that he thought the woman was tampering with the witnesses," and as the witnesses would testify on the trial he would whisper and say, "That woman has got a word in it." At the jail, on the day of the killing, this witness testified that appellant stated that "the woman had emissaries in the jail, and that everybody was acting in obedience to her bidding." Our attention is further called to the acts and conduct of appellant in the jail, and especially to a number of letters in the record, written by him to his mother from the jail. We have examined all of these carefully, and in our opinion they are not the product of an entirely sane mind.

Recurring to the original opinion, it will be observed that we there held that the testimony tended to show insanity, as measured by the right and wrong test, but failed, in our opinion, to show that there was such defect of understanding on the part of appellant as showed that he did not know the right and wrong of the particular act charged against him. We further intimated that there was no testimony suggesting that, although appellant may have known the right and wrong of the particular act, he was impelled thereto by an insane, irresistible impulse; so that it did not become necessary for the court to give a charge on that phase of the defense, although one was requested. The court's charge on the subject of insanity was given in full in the original opinion of this court, and it was not necessary here to repeat it; but nowhere is there any charge on irresistible impulse or emotional insanity. On that subject appellant requested the following charge, which was refused by the court, to wit: "The responsibility of the de-

fendant on his plea of insanity may be determined by inquiring, first, did the defendant have sufficient mental capacity to appreciate the nature of the particular act of killing at the time it was done, or did he have sufficient mental capacity to know the right or wrong of the particular act at the time and under the circumstances? Second, did he know that he was doing wrong in killing William Thaison at the time and under the circumstances? and third, had he sufficient mental capacity and will power to choose whether he would or would not kill William Thaison at the time he did kill him? All these questions must be determined in the affirmative in order to hold defendant responsible for the killing charged in the indictment; and if you, from the evidence, find a negative answer to either one of said questions, you should acquit defendant." We stated in the original opinion that the case of Leache v. State, 22 Texas Criminal Appeals, 279, recognized the doctrine of irresistible impulse. More accurately speaking, said case can not be considered as an authority for the doctrine. The court merely conceded in that case that appellant had no ground of complaint, because the charge of the lower court was ample on the subject of irresistible impulse. The leading text-books, however, citing a number of authorities, do sustain the doctrine. See 1 Whart. Crim. Law, pars. 43-45, inclusive; Busw. Insan., pars. 439-445, inclusive; 1 Bish. Crim. Law, secs. 383-387, inclusive. These authorities draw a distinction between moral insanity and irresistible impulse, holding that moral insanity is no defense to a criminal charge, while an irresistible impulse of an insane person is a defense. We quote from Mr. Wharton (section 450) as follows: "The conclusion we must reach therefore is that an irresistible homicidal impulse in an insane person is a good defense, though such person was able to distinguish between right and wrong. With a sane person, however, it is not a defense, as the law makes all sane persons responsible for their impulses." Mr. Buswell holds as an accepted theory that there are persons who are insane, and who may know the right and wrong of a particular act, and yet be unable to choose the right, being impelled to the wrong by an insane, irresistible impulse. We quote from section 440 as follows: "It is to be observed that every act done by an insane person which is the direct outgrowth of his disease is the result, in a certain sense, of an uncontrollable impulse, since it is not the act of a free agent. This view has been expressed in a number of American cases. Thus it was held that if an insane affection was the efficient cause of the prisoner's act, and that, if otherwise, he would not have done the act, he should be acquitted. But, in order to an acquital, it must appear that the insanity was of such a degree as to create an uncontrollable impulse by overriding the reason and judgment and obliterating the sense of right and wrong as to the particular act done, and deprive the accused of the power to choose between them. So, in a Pennsylvania case, it was held that insanity, as a defense, must be so great as to control the will, and take away the freedom of moral action." And the courts cite with approval the expres-

40th Crim. Reps.—25

sions of Gibson, C. J., "that it [insanity] must amount to a delusion or hallucination controlling the will, making the commission of the act a duty of overruling necessity." Mr. Bishop, on his part, becomes impatient with those who hold to a contrary doctrine. We quote from his work on Criminal Law (volume 1, section 383b) as follows: "Now, if this class of our judges really mean what they say, they are conspiring to overturn an accepted, old, and fundamental part of the law of the land, and with it an immutable part of the law of nature; for, as we saw in our chapter on 'Necessity and Compulsion,' and as even all uneducated persons know, the law of necessity is the highest law known to man, and it is almost the only law which no man ever lived and broke. It is parcel of the law of the land, supreme over all other law; supreme over even our written constitutions; and all our other laws are expounded as by implication containing the exception that they shall not be deemed violated by any act which necessity has compelled. And that there is a solitary incumbent of any judicial bench in the United States, high or low, who really believes and means to assert that our law punishes any man for what he does under a necessity which it is impossible for him to resist, the present writer does not believe, and, if he did believe it, he could only speak of it as an unprecedented horror."

We would observe here that this view appears to be recognized by all the text-books, and supported by the weight of authority. As before observed, we said in the original opinion that it was not necessary to discuss the doctrine of irresistible impulse by an insane person, because, in our conception, the facts of the case did not require an application of the principle. On the motion for rehearing we have been aided by an able brief and argument on behalf of appellant by his counsel, and we have given this matter a further examination, but we are not prepared to change our views already expressed on this subject. There is nothing of a distinctive character in the testimony to indicate that appellant acted on an irresistible, insane impulse. If he was crazy at all, the testimony would suggest that he was incapable of discerning the right and wrong of the particular act which he did, and the court's charge presented this phase of the case. If there was any tangible testimony raising this issue of irresistible impulse, in the opinion of the writer, the court should have given the charge requested, or one similar in terms. As to the question of insanity, the court having presented the law of the case in the charge given, we can not say that the evidence does not sustain the verdict, and the case can not be reversed on this ground.

As stated before, appellant further contends that the court committed an error in instructing the jury that, before appellant could avail himself of the plea of insanity, such insanity must be clearly proven; and he urges that this lays a heavier burden upon appellant than is authorized by our decisions, which merely puts the burden of proof on appellant to establish his insanity; indeed, that "clearly proven" is tantamount to saying that appellant must prove his insanity beyond a reasonable doubt. In this connection we are referred to a number of cases, all civil: Swin-

ney v. Booth, 28 Texas, 113; McBride v. Banguss, 65 Texas, 174; Railway v. Matula, 79 Texas, 577; Railway v. Harriett, 80 Texas, 82; Railway v. Stewart (Texas Civ. App.), 20 S. W. Rep., 962; Rider v. Hunt (Texas Civ. App.), 25 S. W. Rep., 315. These cases sustain the contention of appellant,—that is, in civil cases, as we understand it, the burden is on the party holding the affirmative of an issue to establish the same by a preponderance of evidence before he is entitled to recover; and, if the court shall do more than to so instruct the jury, that it will be error; and if the court should tell the jury that the plaintiff must abundantly prove, or prove by a preponderance of evidence to the satisfaction of the jury, or that the plaintiff must prove his case by a preponderance of the evidence beyond a reasonable certainty, that it will be error. We note, however, in McBride v. Banguss, supra, that Judge Stayton uses this language: "In civil cases juries should ordinarily find in accordance with the preponderance of the evidence, and the charge which requires a plaintiff to make satisfactory evidence, or clear and satisfactory evidence, may be understood to mean a higher degree of proof than is meant by a preponderance of the evidence; and this is especially true when charges containing such language are often repeated." So it would appear that if there were no explanation of this charge of the court, and we followed the rule on this subject recognized in civil cases, the charge of the court here complained of did lay an additional burden on appellant in establishing his plea of insanity. However, the court gave a charge at the instance of appellant, which, we think, entirely explained the court's charge, and relieved it of the criticism urged by appellant, to wit, the court gave the following: "The defendant is not required to establish his insanity beyond a reasonable doubt. It is sufficient if the evidence is sufficient to reasonably satisfy your minds of the existence of that fact." Aside from this, the charge given by the court has been held a proper one in a number of cases decided by this court. See Clark v. State, 8 Texas Crim. App., 350; Webb v. State, 9 Texas Crim. App., 490; King v. State, 9 Texas Crim. App., 515; Smith v. State, 19 Texas Crim. App., 95; Giebel v. State, 28 Texas Crim. App., 151. The latter case quotes with approval from People v. Hamilton, 62 California, 377, as follows: "In the connection in which the words are used, to say that the insanity must be clearly established is not to say that the evidence must more than preponderate, but only that the preponderance must be plainly apparent. Such must be the case in every instance where the affirmative of an issue is sought to be established, and a peculiar presumption overcome. There may be a greater or less degree of lucidity, but the preponderance must be distinctly perceptible. In civil cases fraud is proved by a preponderance of the evidence, yet inasmuch as the law, to the credit of humanity, presumes that men are oftener honest than dishonest, the preponderance must clearly appear. Thus, only, can the fact of fraud or insanity be satisfactorily proved." On this subject the books lay down three rules: First, in order to acquit, the proof must show beyond a

reasonable doubt that the accused was insane; second, in order to convict, when the plea of insanity is made and supported by the evidence, the accuser must show beyond a reasonable doubt that the accused was sane; third, when insanity is alleged, and the allegation is supported by testimony, the accused is to be convicted or acquitted, according as a fair preponderance of all the evidence in the case shows him to be sane or insane when the act was committed. See Busw. Insan., p. 183. Mr. Thompson, in his work on Jury Trials (volume 2, pars. 2526, 2527), discusses the same question, and cites the rule as follows in different States, and he shows that a number of States follow the rule as laid down in this State; that it is proper for the court to charge that appellant must reasonably satisfy the jury that he was insane at the time of the commission of the act by a preponderance of the testimony. See Leache v. State, 22 Texas Crim. App., 279. A number of States and the United States Supreme Court have adopted a different rule on this subject, to wit, that, when the issue of insanity is made, the burden of proof is on the prosecution to show the sanity of appellant beyond a reasonable doubt. However, such has not been the rule in this State, and we adhere to the rule as heretofore laid down. We would observe, however, that in charging on the rule as recognized in this State the court has performed its full duty in instructing the jury that where a defendant relies on insanity, it is only sufficient that he establish this defense by a preponderance of the evidence, and that it is not necessary for him to prove it beyond a reasonable doubt; and especially where the charge uses the expression "clearly proved" this should be qualified by an instruction to the effect that this does not mean that it must be established beyond a reasonable doubt, but merely by a preponderance of the testimony. We do not believe there was any error in the court's charge on this subject as given, when modified and explained by the requested charge which was given. The motion for rehearing is accordingly overruled.

*Motion overruled.*

BROOKS, JUDGE.—I do not agree to the doctrine of irresistible impulse under any circumstances.

DAVIDSON, PRESIDING JUDGE.—It is, in my opinion, not necessary to charge upon the question of irresistible impulse when insanity is at issue.