## C. R. FOSTER V. THE STATE.

No. 10688.   Delivered April 13, 1927.

Rehearing June 24, 1927.

### 1.—Murder—Evidence—Clothing of Deceased—Properly Admitted.

Where, on the trial of appellant for the murder of his wife, he claiming that she shot herself and he having offered testimony on the trial that her clothing was powder-burned, there was no error in admitting the clothes worn by her, in evidence as offering support for or against his theory.

### 2.—Same—Corpus Delicti—Clearly Established.

We do not understand it to be a question of fact for the jury as to whether the corpus delicti, *eo nomine* has been established or not. Where the issue of the death of deceased by violence and appellant's guilt of causing the death was submitted to the jury and they were warranted by the evidence in an affirmative finding, then the corpus delicti was established.

### 3.—Same—Charge of Court—On State's Theory—No Error Shown.

Where, on a trial for murder, the court's charge on the state's affirmative theory which contained the words "not in defense of himself, and not under circumstances which reduced the offense to manslaughter," could not have materially injured appellant, though not raised by the evidence, and especially so in the light of a correct affirmative charge or appellant's defense of suicide, by his wife.

### 4.— Same — Evidence — Exculpatory Statements — Not Necessary to Be Disproven.

Where exculpatory statements of accused were introduced, which were contradicted by the testimony of the state, there was no necessity for the court to charge that such statements must be disproven, and beyond a reasonable doubt by the state before they could convict the appellant. See Slade v. State, 29 Tex. Crim. App. 392; McKinney v. State, 48 Tex. Crim. Rep. 404, and Harris v. State, 281 S. W. 206.

### 5.—Same—Requested Charges—Cured by Main Charge—Properly Refused.

Where appellant requested several special charges containing general

propositions, all of which were covered by the main charge, and other special charges which were given, such requested charges were properly refused.

### ON REHEARING.

#### 6.—Same—Bill of Exception—Incomplete—No Error Shown.

On rehearing appellant insists that we were in error in our original opinion in holding that the clothing worn by deceased were properly admitted in evidence. Appellant's bill complaining of this matter fails to set out any information as to the condition of the clothing, nor that they contained any blood stains or any condition which would likely excite the feelings of the jury, and said bill does not show error. Distinguishing Christian v. State, 46 Tex. Crim. Rep. 47, and other cases cited.

#### 7.—Same—Evidence—Supports the Conviction.

For sound reasons, the province of settling questions of fact on the trial of a criminal case has very properly and wisely been delegated to the jury, and unless this court is impressed that there is no evidence upon which the judgment might be predicated, it will not be disturbed. A careful examination of this record does not disclose to this court that the evidence was not sufficient to warrant the conviction.

Appeal from the District Court of Waller County. Tried below before the Hon. J. L. Manry, Judge.

Appeal from a conviction of murder, penalty twelve years in the penitentiary.

The opinion states the case.

*C. G. Krueger* and *Keet McDade,* for appellant.

*Sam D. Stinson,* State's Attorney, and *Robert M. Lyles,* Assistant State's Attorney, for the State.

LATTIMORE, JUDGE.—Conviction for murder, punishment twelve years in the penitentiary.

Mrs. Foster, wife of appellant, was killed on September 15, 1925, by being shot with a shotgun. The wound showed entry near the navel and that the contents of the load struck the spinal column, from which, as a doctor testified, death was instantaneous. Appellant's theory was that the woman killed herself. A brother of deceased testified that at the time he was approaching the home of deceased between 4 and 5 o'clock in the afternoon and saw his sister at her doorstep going into the house. Witness was thirty-five or forty yards away. He said that just as deceased opened the door he heard the report of a gun. He wrapped his reins around something, possibly the brake staff of the wagon, and ran toward the house, but before he reached it, saw appellant. Witness said it was not over five seconds

after the shot was fired when appellant jumped out of the kitchen door and holloed to witness, "Come here quick, Olga has shot herself." When witness reached the kitchen deceased was lying with her head in the kitchen door and an empty 16-gauge shotgun shell was lying by her. Witness looked around and searched but saw no gun. He told appellant to go to Crowhurst and phone for a doctor. Instead of going to Crowhurst, this witness testified, appellant went to his brother-in-law's, one Milam. Witness said there was no phone at Milam's house. A plat of the house was in testimony. Witness testified there was a bathroom adjoining the kitchen on the south, but no door from the kitchen to the bathroom. He said deceased told him in appellant's presence the day before the killing that appellant was going to quit her "tomorrow," and that appellant spoke up and said that is a lie. Deceased said "Hush, Bob, I will tell more than that on you if you don't dry up." Witness said when he left the house on that day deceased gave him a note to her sister which contained some seventy-odd dollars. A number of witnesses testified to circumstances showing trouble between appellant and deceased. Two young ladies testified that in August before the killing in September they spent the night at the home of appellant and deceased. Appellant was going to leave early the next morning to go to Houston. The two girls testified that they were waked and heard deceased begging appellant not to kill her. They said this took place at the garage; that they could hear appellant talking, but could not tell what he said. They presently heard him drive away. The next morning when they saw deceased there was a bruised and skinned place on her head which was not there the night before. There is testimony showing that appellant and deceased were discussing the proposition of trading off their home, and a witness testified that on the day before the killing deceased told him that she was not going to sign the papers. Another witness testified that appellant told him that he was in the bathroom putting on his shoes when he heard the gun fire at the time of the killing. He claimed to this witness to have gone into the kitchen and that he took the gun. Another witness testified that appellant told him he was sitting on the bed putting on his shoes when he heard the gun fire. Other witnesses testified that there was a woman in Houston whom appellant was visiting at the time of the death of his wife, and that he had been going to see her for some time. One witness testified that appellant told him if said woman would quit her husband he would pay her board for a week. It was shown that said woman had gotten a divorce from her husband,

and there was testimony that she had remarried. Appellant did not testify in the case.

Appellant has filed an able and extensive brief which has been carefully examined by us, in connection with all the bills of exception appearing in the record.

Appellant's first complaint is of the introduction of the clothing worn by deceased at the time of the homicide. It is insisted that same did not shed light on any controverted point in the case. We are unable to agree with this proposition. The appellant introduced testimony to show that the body of deceased and some of the clothing were powder-burned. This manifestly being in support of his proposition that deceased shot herself with the shotgun. There would seem no question of the fact that the clothing worn by deceased at the time of the homicide might be looked to as affording support for or against this theory.

Appellant complains because the court did not instruct the jury as to what would be necessary for the state to prove in order to establish the corpus delicti. We do not understand it to be a question of fact for the jury as to whether the corpus delicti, *eo nomine,* has been established or not. The learned trial judge told the jury in the charge that before they could convict they must believe from the evidence beyond a reasonable doubt that this appellant did unlawfully and with malice aforethought shoot with a gun and thereby kill Olga Foster as charged in the indictment. If the jury believed the testimony supported the issue thus submitted to them, the corpus delicti was established.

There was an exception to paragraph 7 of the court's charge, which is as follows:

"Now, if you believe from the evidence, beyond a reasonable doubt, that the defendant, C. R. Foster, in the County of Waller, and State of Texas, on or about the time alleged in the indictment, with a deadly weapon or instrument reasonably calculated and likely to produce death by the mode and manner of its use, and not in defense of himself against an unlawful attack, real or apparent, reasonably producing a rational fear or expectation of death or serious bodily injury, and acting under circumstances which would reduce the offense to the grade of manslaughter, with intent to kill, did unlawfully and with malice aforethought shoot with a gun and thereby kill said Olga Foster, as charged in the indictment, you will find him guilty of murder as charged and assess his punishment at death or by confinement in the penitentiary for life, or for any term of years not less than five."

The exception to this paragraph of the charge was that it

charged upon a theory not raised by any evidence, and because it submitted a theory at variance with the evidence introduced, and thereby detracted the minds of the jury from the real issues in the case. The authorities cited by appellant in support of this contention are based on some affirmative presentation of a supposed defensive theory which is not supported by the testimony. In the case before us appellant did not take the stand and testify to any affirmative defensive theory, but we have gathered from the testimony that the defense was that of suicide. Appellant's declaration in this regard rested upon statements attributed to him by state witnesses. Other than conclusions derived from such statements, the evidence does not affirmatively disclose the facts immediately surrounding the killing. We are unable to bring ourselves to believe that the inclusion in paragraph 7 of the charge of the statement that if he killed the woman "Not in defense of himself and not under circumstances which reduced the offense to manslaughter," could be of any material injury to the accused. We think the situation different in such case from one in which there is an affirmative charge directed at a special defensive issue which was not raised by the testimony. The court did instruct the jury that if deceased came to her death by shooting herself, or if they had a reasonable doubt on this proposition, they should resolve the doubt in favor of appellant and acquit him. The court also gave a special charge asked by appellant telling the jury that the state must prove clearly and beyond a reasonable doubt that deceased came to her death by the violent act of another and not by her own act, either intentionally or accidentally, and unless the state has done this beyond a reasonable doubt, they should acquit the appellant. The court also charged the jury on the law of circumstantial evidence.

Appellant complains at length, and cites authorities, on the proposition that the court ought to have told the jury that the state, having introduced a statement by deceased exculpatory in its nature, would be bound by same unless disproved beyond a reasonable doubt. In this case the state was not relying upon a confession, and apparently the statements referred to were introduced upon the theory that they were part of the res gestae.

In some cases it is stated that when the state does not rely for conviction alone upon the admissions or confessions of the defendant, but introduces evidence in rebuttal of the confession and admissions, it is not error to refuse to charge that the state is bound by such exculpatory statements, and we find Slade v. State, 29 Tex. Crim. App. 392; McKinney v. State, 48 Tex. Crim.

Rep. 404, and other authorities cited. Other cases hold that when the theory embraced in the exculpatory statements is plainly submitted, it is not error to fail to give the charge that the testimony must show the falsity of such statements. Harris v. State, 281 S. W. 206. In the instant case the exculpatory statements were that deceased killed herself. The court gave an affirmative charge telling the jury that if she did so, or they had a reasonable doubt of the fact, to acquit. See Pickens v. State, 218 S. W. 755. The statements attributed to appellant were self-contradictory and destructive of each other, and appeared to be abundantly disproven by the state's testimony. One witness said appellant told him that he was in the bath-room putting on his shoes when he heard the shot. Another witness said appellant told him he was sitting on the side of the bed in the bedroom putting on his shoes when he heard the shot. Another witness testified that appellant sprang out of the door into which deceased had just gone, within five seconds after the shooting occurred, and there was no door between the bathroom and the kitchen. It was also shown that in the interim between the firing of the gun and the appearance of appellant in his back yard, that the gun had been unbreeched, the shell removed, and the gun disposed of by someone. That this could not have been done by deceased is evident from the doctor's statement that a wound such as he found upon her body would produce instantaneous death. We are of the opinion that the court did not err in declining to instruct the jury in regard to the burden being upon the state to disprove the excul-patory statements referred to.

Appellant asked several special charges containing general statements such as that the presumption of innocence remains with the defendant throughout the trial, and that the state must prove that the deceased came to her death by the acts or criminal agency of another and not by her own act or by accident. In so far as said special charges present applicable instructions, they seem to be covered by the main charge and by special charges Nos. 10 and 11 which were given.

We have carefully considered each of the propositions ad-vanced by appellant in connection with the authorities cited, but find ourselves unable to believe that this accused has not had a fair and impartial trial, or that the jury were unwar-ranted in their conclusion of guilt.

The judgment will be affirmed.                    *Affirmed.*

## ON MOTION FOR REHEARING.

HAWKINS, JUDGE.—Insistence is renewed that the admission in evidence of the clothing worn by deceased at the time of her death should have been held to have been reversible error. The bill of exception complaining of this matter gives us no information as to the condition of the clothing. There is no certificate that they were blood-stained or in any condition which would likely excite the feelings of the jury. In his motion appellant refers us to Christian v. State, 46 Tex. Crim. Rep. 47, 79 S. W. 562; Melton v. State, 47 Tex. Crim. Rep. 451, 83 S. W. 822, and especially to Williams v. State, 61 Tex. Crim. Rep. 356, 136 S. W. 771. In none of these cases was a reversal based solely upon the introduction in evidence of the clothing of deceased. The matter was not even discussed in the original opinion in Williams' case, but reversal was predicated on other grounds. Only upon motion requesting the court to pass upon other bills of exception was the question mentioned. The point involved was recently discussed in Trigg v. State, 99 Tex. Crim. Rep. 376, 269 S. W. 782, in the opinions both on original submission and on rehearing. We believe the views there expressed are correct. The bill complaining of the introduction of the clothing in the present instance, we think, presents no error demanding reversal, and especially so where the bill is silent as to their condition.

Appellant presents in connection with his motion a most forceful argument in support of his contention that the evidence did not authorize the verdict and that this court should not permit the judgment to stand. Impressed with the earnestness of counsel in such contention in oral argument we have again' very carefully reviewed the statement of facts. As recognized by counsel, it is extremely difficult for this court to get the exact and relative positions of parties from the record or to grasp the significance of the movements and statements of witnesses which might be perfectly clear to the jury before whom the case is being tried from seeing the witnesses and comprehending their designation of locations, etc., which necessarily mean little when read by us. For this reason the province of settling questions of fact has been very properly and wisely delegated to the jury and unless this court can ascertain from the record that there is no evidence upon which the verdict might be predicated it should not be disturbed. Our conclusion from a further and careful scrutiny of the facts is that this court would be unauthorized to say that

the jury was without evidence to support the conclusion reflected by their verdict.

So believing, and thinking the other questions presented to have been properly decided, it is our duty to overrule the motion for rehearing, and it is so ordered.

*Overruled.*