# W. R. SIMPSON V. STATE

No. 27,839. February 8, 1956.

Appellant's Motion for Rehearing Overruled
May 30, 1956.

Appellant's Second Motion for Rehearing Overruled
(Without Written Opinion) June 27, 1956.

*John McKelvey,* Electra, *Roger W. Crampton,* and *Allen & Johnson (Z. D. Allen,* of Counsel), Wichita Falls, for appellant.

*Jimmy Castledine,* District Attorney, Wichita Falls, and *Leon Douglas,* State's Attorney, Austin, for the state.

DICE, Judge.

The conviction is for murder with malice; the punishment, eighteen years in the penitentiary.

The state's evidence shows that the deceased, Mrs. Susie Simpson, who was the appellant's wife, was shot and killed on the afternoon of August 16, 1954, while seated in an automobile parked in the driveway at her residence in the city of Electra.

The killing occurred around 4 o'clock, p.m., and after the shooting Mrs. Simpson was found seated behind the steering wheel of her car, apparently dead, and the appellant was lying in the garage with a bullet wound in the back of his head and with a gun between his legs.

The following facts and circumstances surrounding the killing are reflected by the state's testimony:

Around 1:45 o'clock p.m., on the afternoon in question Mrs. Betty Hamilton, who lived across the street from Mrs. Simpson's home, saw Mrs. Simpson come out of her house, get in her car and start backing out; that appellant drove up, got out of his car and got in the car with Mrs. Simpson, and thereafter, around 4 o'clock, p.m., Mrs. Hamilton heard some shots and heard Mrs. Simpson scream.

On the same afternoon, around 3 o'clock, p.m., Mrs. Ettadell Hamilton, while going to visit her daughter-in-law, observed two cars parked in Mrs. Simpson's driveway, facing the garage, and saw the appellant and his wife sitting in her automobile; that after the shots were fired Mrs. Hamilton, upon going to a neighbor's house to use the telephone, saw the appellant standing in the garage, and as she was returning from the neighbor's house, saw appellant lying in the garage and Mrs. Simpson seated under the steering wheel of her car, with her head back and hanging out of the door.

After the shooting a bullet hole was found in the windshield of Mrs. Simpson's automobile in front of where she was sitting and two empty cartridges were found in the floor board opposite her body. Two empty cartridges were found between her automobile and the appellant's car which was parked opposite her car. In the garage where appellant was lying four empty cartridges were found and three bullet holes in the wall and one in the ceiling. The gun taken from appellant contained one

empty shell and three which had not been fired, and a box of shells was found in appellant's automobile. The testimony shows that the cartridges found at the scene were 32-20 calibre and would fit the rifle taken from the appellant.

The testimony shows that after the shooting, while appellant was lying in the garage, he stated, "She shot me," but did not identify to whom he was referring. It is further shown that no weapon was found on the person of Mrs. Simpson.

Dr. William Paul Lochte, a pathologist who performed an autopsy upon the body of Mrs. Simpson, testified that he found five bullet wounds, two of which were fatal and the cause of death. The doctor testified that one of the wounds was caused from a shot fired from the front of the body and the others from either the left or right side.

The state's testimony shows that appellant and his wife were divorced in August, 1953, and later remarried in November, 1953; that they again separated in May, 1954, and were not living together at the time of the shooting, and that appellant since the last separation had been urging his wife to again live with him. It is further shown that the marital troubles between appellant and his wife were over his association with a woman by the name of Billijo Urrutia whom he met in May, 1953.

The state offered in evidence an instrument which appellant's daughter, Mrs. Claudine Dickey, testified was in his handwriting, dated "Megargel, Texas. August 14th, 1954," two-thirty p.m., which read:

"Claudine, please forgive me for this but I can't live with her and can't live without her so you children please forgive me and bury us side by side so we can live happy with God. Love. Dad."

Appellant's defense was that of insanity, and the record presents conflicting testimony between the witnesses offered by appellant and the state on the issue.

Certain lay witnesses offered by appellant testified to a change in his personality, particularly within the preceding thirty days before the shooting, and who expressed their opinion that appellant was of unsound mind at that time and at the time of the trial. Nurses who had observed appellant as a

patient in the Wichita General Hospital after the killing testified that in their opinion appellant was of unsound mind at the time of the trial.

Dr. Charles H. Brown, a specialist in psychiatry and neurology, who had observed appellant since August, 1954, in answer to a hypothetical question, expressed his opinion that appellant was of unsound mind on the day of the killing and that at such time he probably knew the difference between right and wrong but it was impossible for him under his mental state to do the right from the wrong. Dr. Brown further expressed his opinion that appellant was of unsound mind at the time of the trial and did not know right from wrong.

The state offered lay witnesses who expressed their opinion that appellant was of sound mind on the day of the killing and at the time of the trial.

By Bill of Exception No. 1, appellant complains of the introduction in evidence of an envelope postmarked at San Antonio, Texas, on December 16, 1953, and addressed to the appellant in handwriting which the state's witness, Mrs. Claudine Dickey, identified as being the handwriting of Billijo Urrutia, whose name and return address was written on the envelope.

Appellant objected to the admission of the envelope on the ground that it was hearsay to him; that the handwriting thereon had not been sufficiently identified and that the introduction of the envelope would cause the jury to speculate as to what its contents might be.

Under the record we perceive no reversible error in the admission of the envelope in evidence. The testimony before the jury shows that the appellant had received other letters from Billijo Urrutia. In view of this testimony, the admission of the envelope in question could not have prejudiced the jury against the appellant. The contents of the letter in the envelope, upon appellant's objection, were not admitted in evidence.

By Bill of Exception No. 2, appellant complains of the introduction in evidence, over his objection, of the instrument heretofore set out which was postmarked on August 14, 1954, at Megargel, Texas, and addressed to "Claudine." Appellant's objection was for the reason it was not shown when the note

was written, nor where or when the note was recovered, or that it was recovered in a lawful manner.

The Court did not err in permitting the instrument to be introduced in evidence. The instrument was shown to be in the appellant's handwriting by the testimony of his daughter, Mrs. Claudine Dickey, and the writing thereon shed light upon the issue of his guilt. The fact that it was not shown when the instrument was written or found did not render it inadmissible. There is no showing in the record that the instrument was recovered in an unlawful manner but on the contrary it is intimated that it was found in appellant's car by his son.

Appellant complains of the court's charge on insanity and insists that the instruction as to the test of insanity was erroneous, in that it failed to include the element of appellant's ability to choose between the right and the wrong and specifically instruct the jury that if appellant did know right from wrong and was unable to choose between the right and the wrong, then they would acquit him.

The court in his charge instructed the jury that in order to establish a defense on the ground of insanity it must be proved "that at the time of committing the act the party accused was laboring under such defect of reason, from disease of mind, as not to know the nature and quality and consequences of the act he was doing; or if he did know, that he did not know he was doing wrong, that is, that he did not know the difference between the right and the wrong as to the particular act charged against him" and that " x x x the mind must have been so dethroned of reason as to deprive the person accused of a knowledge of the nature and quality and consequences of the particular act done and of the right and wrong of the particular act done."

We think the court's instruction laid down a sufficient test to be followed by the jury in passing upon the question of appellant's sanity. Under the instruction the test was whether appellant had the ability to know the nature and consequences of his acts and the difference between right and wrong. Such is the test of insanity in this state. 12 Tex. Jur., Sec. 53, page 288; Hurst v. State, 40 Tex. Cr. R. 378, 46 S.W. 635; Black v. State, 137 Tex. Cr. R. 173, 128 S.W. 2d 406; and Ross v. State, 153 Tex. Cr. R. 312, 220 S.W. 2d 137. On the question of insanity the doctrine of irresistible impulse is not recognized in

this state. Ross v. State, supra, and Morris v. State, 157 Tex. Cr. R. 14, 246 S.W. 2d 184.

We overrule appellant's contention that the state failed to prove that element of the corpus delicti that the deceased met her death by the act and agency of the appellant. In prosecutions for murder proof of the corpus delicti may be made by circumstantial evidence. West v. State, 116 Tex. Cr. R. 468, 34 S.W. 2d 253; and Parks v. State, 124 Tex. Cr. R. 405, 63 S.W. 2d 301. Without restating the facts, we think the circumstances shown exclude every other reasonable hypothesis except that the deceased met her death at the hands of the appellant.

The court did not err in refusing to instruct the jury as to the necessary proof required of the state to prove the corpus delicti and agency of the appellant in the commission of the offense. The court in its charge had required the jury to find and believe from the evidence beyond a reasonable doubt that he killed his wife by shooting her with a gun before they could convict him. Having given this instruction, a charge on the corpus delicti was not required. Foster v. State, 107 Tex. Cr. R. 376, 296 S.W. 537.

By Bill of Exception No. 13 appellant complains of the refusal of the court to declare a mistrial after the assistant district attorney in his opening argument to the jury, when referring to Billijo Urrutia, stated: "I think I can say this, as far as I know the only person in this room that knows where that woman is is Mr. John McKelvey," the said John McKelvey being one of appellant's counsel.

The bill reflects that the court sustained appellant's objection to the statement but does not show that appellant requested the court to instruct the jury to disregard the statement.

We do not think the argument complained of was so obviously prejudicial that its harmful effect could not have been removed by an instruction from the court to disregard the same. The bill, not showing that appellant requested such an instruction, fails to present reversible error.

Finding the evidence sufficient to support the conviction, the judgment is affirmed.

Opinion approved by the Court.

ON APPELLANT'S MOTION FOR REHEARING

DAVIDSON, Judge.

In his motion for rehearing, appellant challenges the correctness of the conclusions expressed in our original opinion. No new contentions are expressed in the motion.

We have again reviewed the entire case.

As we understand appellant's contention as to the charge of the trial court touching his defense of insanity, it is that he was entitled to have that defense submitted from two viewpoints, one of which is the so-called right and wrong test—that is, in order for the defense of insanity to be complete the accused must be unable to know the difference between the right and wrong of the act he is then doing.

The trial court adequately charged the jury from that viewpoint.

The other viewpoint which appellant insists should have been submitted is to the effect that though he may have known the difference between the right and wrong of the act he was committing, yet if he was unable to choose between the right and wrong of that act, the defense of insanity would be established, nevertheless.

Such a charge the trial court refused.

We are unable to agree that the trial court was in error.

If an accused knows or is able to distinguish the difference between the right and wrong of the act he is then doing, he has sufficient mentality to know that the act which he is then doing is wrong. Otherwise, there would be no occasion for the right and wrong test.

In order for one to choose between two alternatives he must, of necessity, understand those alternatives. So if appellant had sufficient mentality to know that the act he was then doing was wrong, he had sufficient mentality to choose between the wrong and the right. On the other hand, if he was unable to know that the act he was doing was wrong, then he was not possessed of sufficient mentality to choose between that which he did not know and the right.

It is apparent, therefore, that if appellant's contention be correct and that the defense of insanity may be predicated upon the ability of one to choose between right and wrong when he knows the right or wrong of the act, the doctrine of irresistible impulse has been written into the law of insanity as a defense.

We are unwilling to approve that doctrine.

Consideration has been given again to appellant's contention that reversible error is reflected by the statement of state's counsel that a member of appellant's counsel knew the whereabouts of an absent witness.

While the question is not without difficulty, we remain convinced that the statement was not of such nature as that it would require a reversal of the conviction notwithstanding the action of the trial court in withholding the statement from the jury's consideration.

All other questions have been examined, and we remain convinced that a correct conclusion was reached originally.

Appellant's motion for rehearing is overruled.