704 S.W.2d 565 (1986)
Hertha Lee ROBINSON, Appellant,
v.
The STATE of Texas, Appellee.
No. 09 85 165 CR.
Court of Appeals of Texas, Beaumont.
February 5, 1986.
*566 William G. Martin, Jr., Beaumont, for appellant.
John R. DeWitt, Asst. Criminal Dist. Atty., Beaumont, for appellee.

OPINION
BURGESS, Justice.
Hertha Lee Robinson was indicted for burglary of a building with two prior convictions alleged. After a plea of "not guilty" before a jury, he was found guilty. Thereafter, he plead "true" to the enhancement allegations and the jury assessed his punishment at life in the Texas Department of Corrections. He appeals alleging insufficiency of the evidence and reversible and fundamental error as a result of the court bailiff handing the jury some exhibits as they were entering the jury room.
In both direct and circumstantial evidence cases the reviewing court will look at all the evidence in the light most favorable to the verdict or judgment. Houston v. State, 663 S.W.2d 455 (Tex.Crim.App.1984). There is very persuasive evidence from two witnesses. The first witness stated:
"A. ... And when we come back to the front door of my house the two figures were coming across leaving away from the building.
"Q. They were coming from the building"
"A. Yes.
"Q. What did you do at that point?
"A. Well, I went on in and proceeded to call the police because evidently there was no response when my husband called.
"Q. Did you continue to observe these two people?
"A. Yes.
"Q. Where were you at when you observed them at that point?
"A. My bedroom window.
"Q. From your bedroom window there was a clear view of Mr. Toney's garage?
"A. Yes.
"Q. What did you notice in the building?
"A. They were coming down the street. One was carrying a large object, the other one was pulling an object.
"Q. The one carrying the large object, was he traveling with the other person?

* * * * * *
"Q. What did you further observe?
"A. Well, the guy that was coming down toward our house on 17th Street was pushing an object, a long object. The other guy was completely out of my view then because he went across the lot. There is a vacant lot there.
"Q. So did you have occasion to see this man pulling the object again?
"A. Yes. When I went to the front door to see where my husband and son was.
"Q. What did you see?
"A. Saw the man pulling this object. Of course, he just left it there when they started an altercation with my husband.
"Q. What did your husband do?
"A. He was trying to apprehend him.
"Q. Were you there when the police arrived?
"A. Yes.
*567 "Q. Did you see them arrest this man?
"A. Yes.
"Q. I would like you to look around the courtroom and tell me if you see the person that the police arrested that night, the man pulling the object, if he is here today.
"A. Yes, he is.
"Q. Would you please point him out and describe what he is wearing.
"A. The Defendant, wearing a white T-shirt."
The next witness stated:
"A. My son was looking out the window and my son said, daddy, there is someone breaking in Mr. Ray Leonard's place.
"Q. Did you look out the window?
"A. Looked out the window.
"Q. And what did you observe?
"A. When I was looking out the window I observed two people.
"Q. Where?
"A. At Mr. Ray Leonard's place.
"Q. What did they appear to be doing?
"A. They were pullingthey pulled the door down and had two objects in their hands.
"Q. Now what did you do at that point?
"A. At that point I called the policemen.
"Q. Did you have occasion to see them again shortly thereafter?
"A. Yes, sir.
"Q. Where was that?
"A. I seen Hertha, the client right there, coming from Mr. Ray Leonard's place pulling one of the objects down the street.
"Q. At what point did you recognize Hertha?
"A. When I had stopped him and told him to take it back.
"Q. At what point did you stop him?
"A. I stopped him right there in front of my house.
"Q. Now you say you recognize Hertha. Is that right?
"A. After, you know
"Q. No, right now here in the courtroom today.
"A. Yeah."

* * * * * *
"Q. After you first observed these two subjects at the garage door of Toney's place and until you stopped Hertha, was there any period of time they were out of your sight?
"A. No."
Appellant argues that there were inconsistencies in the witnesses' testimony and they were not credible. The jury is the exclusive judge of the credibility of the witness and the weight to be given their testimony. Bonham v. State, 680 S.W.2d 815 (Tex.Crim.App.1984). Further, it is the province of the jury to resolve or reconcile conflicts in the testimony, accepting or rejecting such portions as it sees fit. Banks v. State, 510 S.W.2d 592 (Tex.Crim.App.1974). Clearly the jury saw fit to believe both witnesses and disregard any conflicts as a result of cross examination. The evidence is sufficient to sustain the verdict. The first ground of error is overruled.
The other ground of error alleges the trial court committed fundamental and reversible error by allowing the bailiff of the court to hand the jury members as they were entering the jury room for deliberation state's Exhibits Three (3) through Eight (8) (fingerprint cards of appellant, pen packets and prior convictions of appellant), which constituted a comment on the weight of the state's evidence after appellant timely objected to such practice since the jury had not requested the exhibits and then overruling the motion for mistrial.
The occurrence is shown in the record thusly:
"THE COURT: Members of the jury, go with the Bailiff, please, and he will place you in the jury room for your deliberations.

(At 3:01 p.m. the jury retires to commence deliberations).
"[DEFENSE COUNSEL]: Your Honor, I would like to put something in the record. Were State's Exhibits 1 through *568 8 handed to the jury as they walked in? Where are they?
"THE COURT: Three through eight?
"[DEFENSE COUNSEL]: We would contend that they have not been asked for, Your Honor.
"THE COURT: Go see if the jury wants the exhibits.
"[DEFENSE COUNSEL]: That is a comment on the weight of the evidence and we ask for a mistrial.
"THE COURT: Denied.
"[DEFENSE COUNSEL]: Note our exception.
"THE COURT: We will find out if they want them or not.

(The Bailiff determines the jury would like to see the exhibits.)
"THE COURT: Let the record reflect the Bailiff has advised the Court the jury wants to see the exhibits.
What else?
"[DEFENSE COUNSEL]: Not anything at this time, Your Honor."
TEX.CODE CRIM.PROC.ANN. art. 36.25 (Vernon 1981) provides: "There shall be furnished to the jury upon its request any exhibits admitted as evidence in the case." (emphasis ours) A jury may take with them any exhibits admitted as evidence, though a refusal or failure to allow the jury to have such exhibits is not error unless the jury requests the exhibits. Lopez v. State, 628 S.W.2d 82 (Tex.Crim.App.1982). Compare the criminal rule with the civil rule enunciated in First Employees Ins. Co. v. Skinner, 646 S.W.2d 170 (Tex.1983) wherein the court stated at 172:
"We conclude that Rule 281 is mandatory and that the trial court is required to send all exhibits admitted into evidence to the jury room during the deliberations of the jury. Furthermore, this rule is self-operative and requires no request from the jurors or counsel."
While the procedure complained of did not strictly comply with article 36.25 it did not amount to reversible error. It can in no way be construed as a "comment on the evidence" or a "remark calculated to convey to the jury his opinion of the case" in violation of TEX.CODE CRIM.PROC.ANN. art. 38.05 (Vernon 1981). In any regard, the appellant had plead "true" to the enhancement allegations, no objections had been made to the introduction of the exhibits, thus there could be no harm in the exhibits going into the jury room. Ground of error number two is overruled. The judgment of the trial court is affirmed.
AFFIRMED.