COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS



| | | |
|---|---|---|
| KEVIN BRUSHAE GOODMAN, | § | No. 08-24-00031-CR |
| Appellant, | § | Appeal from the |
| v. | § | 186th Judicial District Court |
| THE STATE OF TEXAS, | § | of Bexar County, Texas |
| Appellee. | § | (TC# 2019CR11578) |

## MEMORANDUM OPINION[1]

A jury found Appellant Kevin Brushae Goodman guilty on 20 counts of possession of child pornography, and the trial court assessed punishment at ten years' confinement and a $10,000 fine and $600 in court costs for each count.[2] In five issues on appeal, which we have reordered below, Appellant asserts (1) the evidence is legally insufficient to support his conviction and the trial court abused its discretion by denying his motion for a directed verdict, (2) he was not afforded his statutory ten days to prepare for trial, (3) the trial court abused its discretion by allowing

---

[1] The appeal was transferred to this Court from the Fourth Court of Appeals pursuant to a Texas Supreme Court docket equalization order. Accordingly, we apply the Fourth Court of Appeals' precedent to the extent it conflicts with our own. *See* Tex. R. App. P. 41.3.

[2] The sentences for counts I and II run consecutively, and the sentences for counts III through XX run concurrently. The total fines and costs assessed for all 20 counts is $10,600, per the Bill of Cost.

speculative testimony, (4) the trial court abused its discretion by exceeding the scope of information requested by the jury during its deliberations, and (5) the trial court improperly assessed $12,000 in court costs and $200,000 in fines without an ability-to-pay hearing. For the following reasons, we affirm.

## I.  BRIEF OVERVIEW

Appellant was originally indicted on 86 counts of possession of child pornography. On October 27, 2023, and the State went to trial on 20 of the 86 counts, amending one after voir dire. Each alleged offense was said to have occurred on or about April 4, 2017. As explained below, several witnesses testified at trial, including San Antonio Police Department Detective Justin Knox, the State's sponsoring witness for exhibits of the pornographic images found on Appellant's cell phone. Detective Knox testified extensively about the Cellebrite computer program used to extract all the data, both illegal and non-illegal, from Appellant's phone. The data extracted by Detective Knox was used by the State to show Appellant possessed child pornography on or about April 4, 2017.

## II.  ARTICLE 27.11 TEN DAYS' NOTICE

We address Appellant's second issue first because resolving this issue in Appellant's favor would afford him the greatest relief if sustained. *Lopez v. State*, 615 S.W.3d 238, 248 (Tex. App.—El Paso 2020, pet. ref'd). After voir dire concluded, but before the jury was selected and sworn, the State sought to amend one of the counts, which described the pornographic image as "a picture of a child making oral contact with a male *child's* penis[.]" [Emphasis added.] The State asked to waive the word "child's" thereby rendering the final phrase "male penis." In his second issue on appeal, Appellant contends he was not afforded ten days to prepare for trial after the State amended

2

the indictment; therefore, he argues, this Court must reverse the trial court's judgment and render an acquittal. We disagree.

Article 27.11 of the Texas Code of Criminal Procedure provides that "[i]n all cases the defendant shall be allowed ten entire days, exclusive of all fractions of a day after his arrest, and during the term of the court, to file written pleadings." Tex. Code Crim. Proc. Ann. art. 27.11. An appellant is required to either formally or informally invoke the statutory ten days. *See Oliver v. State*, 646 S.W.2d 242, 245 (Tex. Crim. App. 1983) ("[W]hen the provisions of Art. 27.11, . . . are either formally or informally invoked, the statutory ten days must be afforded the accused."). "Under the terms of Art. 27.11, . . . a mandatory statute, there is no requirement that the defendant show harm; he must merely show that he made an affirmative request for the allowed statutory time, and such was refused." *Id.* (Court found Article 27.11 had been "informal[ly]" invoked by counsel's statement that "due to the fact that the defense had already prepared its case and because of the surprise in the State's change in the information we would not be prepared to go to trial at this time").

Here, defense counsel objected as follows:

My client is objecting. He says that this is what the State is intending to go on and that it's too late for them to be changing even more stuff at that point. So we're objecting to the striking of the word "child's." I'll argue that it's essentially trying to amend the . . . indictment before the jury is already in a jury trial.

.          .          .

Okay. So my bill of exception is that the objection not being sustained affects the strategy of the defense, in that in the indictment the striking of the word "child" was an argument that we would be using to discredit the images. Now that the word "child" has been removed, the State is free to argue that it's an adult, thereby impeding the defense's strategy of arguing that it could not possibly be an adult in the image. Therefore, the Court granting what's essentially an amendment to the indictment on the day of trial is prejudicial to my client and should not have been granted.

3

Appellant did not request an additional ten days to prepare, nor did he contend he was unprepared to go to trial on October 27, 2023. Because Appellant did not formally or informally invoke the statutory ten days, we conclude the trial court did not err. *See Macdonald v. State*, No. 13-22-00123-CR, 2023 WL 2319363, at \*4 (Tex. App.—Corpus Christi-Edinburg Mar. 2, 2023, no pet.) (mem. op., not designated for publication) (defense counsel did not articulate any statutory basis for his objection or request additional time to prepare, either explicitly or implicitly; concluding "where no 'affirmative request for the allowed statutory time' was made," appellant did not formally or informally invoke Article 27.11); *Carter v. State*, No. 02-22-00009-CR, 2023 WL 3876759, at \*6 fn.1 (Tex. App.—Fort Worth June 8, 2023, no pet.) (mem. op., not designated for publication) (defense counsel did not seek additional time, but he also agreed to the trial amendment and explicitly waived the ten-day period specified in Article 27.11; holding, "there can be no error from granting the trial amendment in and of itself"). Accordingly, we overrule Appellant's second issue.

### III. TESTIMONY OF DETECTIVE KNOX AND ADMISSION OF EXHIBITS

Before we address the sufficiency of the evidence, we consider Appellant's third issue in which he complains about the admission into evidence of certain testimony and exhibits. *See Lopez*, 615 S.W.3d at 248 (allowing re-ordering of issues). On appeal, Appellant asserts that Detective Justin Knox was not qualified as an expert and that his testimony about State Exhibits 1 through 4 was speculative because the Cellebrite computer program used to extract the data from Appellant's cell phone was not shown to be a valid and scientific form of theory.[3] We review a

---

[3] Appellant also contends Detective Knox was not designated as an expert witness. However, he does not elaborate on this contention; therefore, we do not address the merits of that particular complaint.

trial court's decision to admit or exclude evidence for an abuse of discretion. *Martinez v. State*, 327 S.W.3d 727, 736 (Tex. Crim. App. 2010). The trial court abuses its discretion when its decision lies outside the "zone of reasonable disagreement." *Id.* We will uphold the trial court's ruling if it is correct under any theory of law applicable to the case. *Foley v. State*, No. 08-13-00039-CR, 2015 WL 4572123, at *4 (Tex. App.—El Paso July 29, 2015, pet. ref'd) (not designated for publication).

Detective Knox testified that he had worked for six years in the Digital Forensics Unit. Five of those years included serving on a U.S. Secret Service Electronic Crimes Task Force. He also referenced his training using Cellebrite, which is a suite of forensics tools used to download cellular phone data and produce a forensic report usable in court.[4] After Detective Knox testified about his background and education, the State asked him about Cellebrite. He said he used the Cellebrite program on approximately 200 phones from October 2022 to October 2023, and has used Cellebrite for about six years. The State then asked to designate him as an expert. After Appellant objected, Detective Knox testified further about Cellebrite, and the State again moved to designate him as an expert in cell phone extractions. Appellant objected that the State had not demonstrated Cellebrite was an accepted scientific protocol and argued it was merely "soft science." The trial court overruled the objection.

Detective Knox then testified about State Exhibits 1 through 4. He testified that after he extracts data using Cellebrite, he creates a report. Exhibit 1 is a DVD he generated when he processed Appellant's cell phone; it contains a copy of the extraction, which includes everything from Appellant's cell phone. Exhibit 2 is a malware report he generated when he extracted data

---

[4] "Cellebrite" is a computer application used to extract and read forensic data from digital devices. *See Wright v. State*, 618 S.W.3d 887, 890 (Tex. App.—Fort Worth 2021, no pet.). Detective Knox explained that Cellebrite extracts any usable data from a cell phone, such as call logs, photos, videos, and text messages.

from Appellant's cell phone.[5]  Exhibit 3 is a USB flash drive that contains a condensed version of his original Cellebrite extraction. Exhibit 3 includes "things . . . tagged as evidence relevant to the case," but not anything believed to be irrelevant to the case or private. Exhibit 4 is a USB flash drive that contains the full version of his Cellebrite report, which comprises the same information as Exhibit 1.

Though all exhibits were admitted in evidence over Appellant's objections, only Exhibit 3 was published to the jury. Exhibit 3 contains, among other data, information that identified the cell phone from which data had been extracted, tagging three calls, 28 message chains, various internet searches, and 374 images with time stamps showing when the image was created or accessed on the phone.[6]  Not all of the images were published to the jury using Exhibit 3.

The State next introduced Exhibit 5, a USB flash drive containing a PowerPoint with all of the child pornography images. Appellant affirmatively stated, "no objection" to admitting Exhibit 5. Exhibit 5 also contains data related to emails, Facebook posts, and other images not related to child pornography but tending to show the phone belonged to Appellant. The State solicited Detective Knox's testimony about the multiple images.

On appeal, Appellant contends Detective Knox was not qualified to express his opinion about the extraction of data from a cell phone, and there was no showing that Cellebrite was a "valid and scientific form of theory."[7]  Appellant concludes that because Detective Knox's

---

[5] Detective Knox testified there was no indication the malware brought child sexual assault material or related searches on the phone.

[6] Detective Knox said the 28 message chains could contain hundreds of messages. He also tagged 5,388 internet searches, 89 downloads, 886 searched items, five webbed bookmarks, and 4,408 items related to the history. He said the phone's search history revealed "[l]ots of teen [and] young female/male information."

[7] On appeal, Appellant cites *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 589 (1993) ("trial judge must ensure that any and all scientific testimony or evidence admitted is not only relevant, but reliable") and *Kelly v. State*, 824 S.W.2d 568, 572 (Tex. Crim. App. 1992) (en banc) ("trial court's first task is to determine whether the

6

testimony and Exhibits 1 through 4 were the only evidence offered by the State to support its claim that he possessed child pornography, the judgment should be reversed and the case remanded for a new trial. We disagree with both of Appellant's arguments.

Detective Knox testified that he is a Certified Cellebrite Operator and is certified in computer forensic training. He has testified as an expert in cell phone extraction. Detective Knox teaches a course to detectives and district attorneys on how to use the Cellebrite reader, which enables them to read the report generated after data is extracted from a phone.

Detective Knox stated Cellebrite is "widely known throughout the industry as a tool [used] to download data from cell phones and things to get a forensic report that's usable in court." He also described Cellebrite as a company that has "various software tools that aid in extracting data from devices and then process[es] them into a usable format that's understandable [to read]." He said Cellebrite is accepted in the law enforcement industry and is "pretty easy" to use once a person has received training—"you [just] follow the prompts." When asked how he knew if a cell phone extraction was successful, he replied:

> When the extraction is performed, it will provide a document that will show it was successful. And it will also hash the extraction, which is a way to identify that particular set of data at a later time, if needed, to show that it hasn't been altered in any way.

A similar issue was considered in *Wright*, where the appellant challenged the reliability of the expert testimony through which the State sponsored messages and photos extracted from the appellant's cell phone. *Wright v. State*, 618 S.W.3d 887, 890 (Tex. App.—Fort Worth 2021, no pet.). He asserted the State failed to establish the reliability of Cellebrite, which the State's expert

testimony is sufficiently reliable and relevant to help the jury in reaching accurate results"). However, neither at trial nor on appeal does Appellant elaborate on his contention that Cellebrite is not reliable under *Daubert* and *Kelly*. As explained below, we conclude there was no need to do so in this case.

7

used to extract the data from the phone. *Id.* The court of appeals concluded that "for such a basic technique [as Cellebrite], the State was not required to establish a *Kelly*-style reliability predicate through expert testimony," and it was therefore "immaterial whether the State's effort to lay such a predicate was deficient." *Id.* The court determined that it did not need to decide whether the State laid an adequate reliability predicate because it was convinced that *Kelly* and *Daubert* did not govern. *Id.* at 892.

Relying on its prior opinion in *Washington v. State*,[8] the *Wright* Court noted "that unlike other technologies, a simple data transfer was 'amenable to precise independent corroboration or confirmation by untrained lay witnesses [and] proper application by an untrained judge or jury without supporting expert testimony.'" *Id.* at 892–93 (quoting *Washington*, 2015 WL 505172, at *4). "And because the witnesses' corroboration 'empirically showed that the extractions accurately copied and displayed text-message exchanges,' [the *Washington* Court] held that no expert testimony was required to demonstrate whatever reliability was necessary." *Id.* (quoting *Washington*, 2015 WL 505172, at *4).

The *Wright* Court then noted that "[o]ne purpose served by the reliability requirement is to ensure that complex or unfamiliar systems and ideas—those that 'require significant expertise to interpret' or that are 'based on scientific theory'—do not lead the lay fact-finder astray." *Id.* at 893. The court held, "[r]ather than advancing those aims, the drift of our reasoning in *Washington* was nearly the opposite: that this sort of data-transfer evidence was so simple and familiar to any computer user, so plainly verifiable and free of scientific variability, that a lay witness's

---

[8] In *Washington*, a detective used "UFED Cellebrite" to extract data from a cell phone and copy it to another location. No. 02-13-00526-CR, 2015 WL 505172, at *2–5 (Tex. App.—Fort Worth Feb. 5, 2015, pet. ref'd) (mem. op., not designated for publication). The detective explained that he knew the process was successful because the program confirmed it and because the program copied a report of the extracted data onto a memory stick. *Id.* at *2.

corroboration of the results based on personal knowledge would sufficiently guard against misleading the fact-finder, even without an expert or a reliability predicate." *Id.* "[A] lay witness's corroboration that a process yielded accurate results usually serves the goal of authentication, not reliability; Rule 901 provides that evidence about a process or system may be authenticated by 'describing a process or system and showing that it produces an accurate result.'" *Id.* (quoting Tex. R. Evid. 901(b)(9)). The *Wright* Court concluded that its "opinion in *Washington* suggest[ed] that so long as the data extracted from the cellphone is properly authenticated by lay testimony, no reliability predicate or expert testimony is required." *Id.*

Similar to the facts in *Wright*, Detective Knox's testimony rested on his Cellebrite training, his experience using Cellebrite, and his ability to authenticate the data extracted from the phone based on a report generated by Cellebrite. "To the extent that his testimony featured any opinions at all, they were based upon his perceptions and his training in using the software, not on anything that would require significant expertise or scientific acumen." *See id.* "No 'specialized knowledge' was required to see that the extraction produced intact photos" and other data from Appellant's phone. *Id.* Thus, we conclude, as did the court in *Wright* and *Washington*, "that this case calls for a similar result[:] it is enough that the extracted data was authenticated by lay testimony, even without a reliability predicate properly laid by an expert." *Wright*, 618 S.W.3d at 894[9]; *Washington*, 2015 WL 505172, at *4; *see also Villareal-Garcia v. State*, 671 S.W.3d 791, 792–93 (Tex. App.—Dallas 2023, no pet.) (adopting reasoning in *Wright*). We conclude that Detective

---

[9] After examining the holdings in other cases, the *Wright* Court concluded "copying data using Cellebrite is like the common exercise of using a thermometer, though it is perhaps even more like bagging up evidence at a crime scene." *Id.* at 895. "But ordinarily, we do not require expert testimony to establish the reliability of these aspects of the process [of bagging evidence] before there may be simple testimony that an officer took evidence, preserved it in a bag, and initialed it for authentication purposes." *Id.* The court concluded, "[i]n the same way, Detective Kiser effectively used a digital tool to 'bag up' digital evidence." *Id.*

Knox's testimony sufficiently authenticated the extracted data to satisfy Rule 901(b)(9). *See* Tex. R. Evid. 901(a), (b)(9).

Furthermore, Appellant did not object to Exhibit 5, which contained images linking the phone to Appellant and images of child pornography. A party must object every time the allegedly inadmissible evidence is offered or obtain a running objection to the admission of the evidence. *Valle v. State*, 109 S.W.3d 500, 509 (Tex. Crim. App. 2003). Any error in the admission of evidence is cured when the same evidence comes in elsewhere without objection. *Id.* "Thus, a party may not complain on appeal about improperly admitted evidence if the same or similar evidence is admitted without objection at another point in the trial, either before or after the admission of the disputed evidence." *Farias v. State*, No. 08-23-00234-CR, 2024 WL 3349079, at *14 (Tex. App.—El Paso July 9, 2024, no pet.) (mem. op., not designated for publication). We conclude that even if the trial court erred in admitting either the testimony of Detective Knox or Exhibits 1 through 4, the alleged error was cured because Appellant did not object to the admission of Exhibit 5.

We overrule Appellant's third issue.

## IV. SUFFICIENCY OF THE EVIDENCE

Appellant phrases his first issue on appeal as a challenge to both the legal and factual sufficiency of the evidence. However, the substance of his complaint is that the trial court erred by denying his motion for a directed verdict because the State "did not provide a scintilla of evidence at trial that [he] knowingly or intentionally possessed child pornography." He contends the only evidence offered to support mens rea was "junk science," which does not amount to legally sufficient evidence. Therefore, we review Appellant's issue under the standard applicable to a trial court's ruling on a motion for a directed verdict.

10

## A.  Standard of review and applicable law

We review a trial court's ruling on a motion for directed verdict as a challenge to the legal sufficiency of the evidence. *See Richardson v. State*, No. AP-75200, 2008 WL 217973, at *2 (Tex. Crim. App. Jan. 23, 2008) (not designated for publication) ("Because a challenge to a . . . decision to overrule a motion for a directed verdict presents an attack to the legal sufficiency of the evidence, we will review the . . . ruling while considering the legal sufficiency of the evidence"); *Fragoso v. State*, No. 08-22-00182-CR, 2023 WL 4295855, at *3 (Tex. App.—El Paso June 30, 2023, pet. ref'd) (mem. op., not designated for publication) (same).

In a legal-sufficiency challenge, we focus solely on whether the evidence, when viewed in the light most favorable to the verdict, would permit any rational jury to find the essential elements of the offense beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *Brooks v. State*, 323 S.W.3d 893, 912 (Tex. Crim. App. 2010) (establishing legal sufficiency under *Jackson v. Virginia* as the only standard for review of the evidence). We defer to the trier of fact to resolve conflicts in testimony, weigh the evidence, and draw reasonable inferences from basic facts to ultimate facts. *See Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007); *see also Nisbett v. State*, 552 S.W.3d 244, 262 (Tex. Crim App. 2018).

Thus, in analyzing the legal sufficiency of the evidence, we determine whether the jury's inferences necessary to establish guilt are reasonable based on the combined force of the evidence when viewed in the light most favorable to the verdict. *Orellana v. State*, 381 S.W.3d 645, 653 (Tex. App.—San Antonio 2012, pet. ref'd); *Wise v. State*, 364 S.W.3d 900, 903 (Tex. Crim. App. 2012). "Each fact need not point directly and independently to the guilt of the appellant, as long as the cumulative force of all the incriminating circumstances is sufficient to support the conviction." *Hooper*, 214 S.W.3d at 13. "Circumstantial evidence is as probative as direct evidence

in establishing the guilt of an actor, and circumstantial evidence alone can be sufficient to establish guilt." *Id.* "On appeal, the same standard of review is used for both circumstantial and direct evidence cases." *Id.*

A person commits the offense of possession of child pornography if:

(1) the person *knowingly or intentionally possesses*, or knowingly or intentionally accesses with intent to view, visual material that visually depicts a child younger than 18 years of age at the time the image of the child was made who is engaging in sexual conduct, including a child who engages in sexual conduct as a victim of an offense under Section 20A.02(a)(5), (6), (7), or (8); and

(2) the person knows that the material depicts the child as described by Subdivision (1).

Tex. Penal Code Ann. § 43.26(a) (emphasis added). "Possession" is defined as "actual care, custody, control, or management." *Id.* § 1.07(39). Appellant's argument on appeal focuses on "possession."

## B. Background

Raul Castillo testified that on April 7, 2017, he was walking home from work when he found a broken cell phone. Believing he could discover the phone's owner, he tried to find contact information for the owner or someone who knew the owner but was unsuccessful. Once he reached his apartment, his roommate, Justin Brachey, began looking through the phone. Brachey showed Castillo what he saw on the phone, which Castillo described as "video thumbnails depicting young boys . . . doing sex acts." Castillo and Brachey contacted the police, who came to collect the phone and take statements.

San Antonio Police Detective Ray Saenz testified that he found a cell phone number on the incident report, which was later identified as belonging to Appellant. After obtaining a search warrant to look for evidence of child pornography, Detective Saenz took the phone and the warrant

to the technical surveillance unit to be forensically searched. Detective Saenz later obtained a forensic report, confirmed for himself that the phone contained child pornography, and confirmed the that images had been downloaded from November 16, 2016, through April 4, 2017. He also stated that he saw other non-illegal images on the phone between those dates, such as Facebook photos.

Detective Knox testified about how he extracted the data from Appellant's cell phone and produced the forensic report reviewed by Detective Saenz. He stated that he extracted everything from Appellant's phone.

Appellant testified on his own behalf at trial. He did not deny that the phone belonged to him or that it contained images. But, he stated that Javon—someone with whom he was in the business of selling marijuana—occasionally used his phone. He denied going to any websites for pornography involving underage children and said he did not know any images or such website searches were on his phone. He assumed Javon was doing this to him to "take out the competition." He denied having possession of the phone when the images were downloaded.

On cross-examination, the State asked Appellant if he had possession of his phone on April 4, 2017, the date the images were downloaded. He replied, "on that day no, I did not, because I was not the one that did it." The State then asked Appellant to explain all the child pornography websites that had been frequented since November 2016. By way of explanation, he claimed he allowed "other people" to use his phone. Appellant also admitted he visited Facebook both before and after the date the images were downloaded, but said he did not use his phone for anything illegal.

At the close of evidence, Appellant moved for a mistrial on the ground that the State did not satisfy its burden to show Appellant had "possession of any type" of child pornography. The

State countered that it produced sufficient evidence through Detective Knox and the Cellebrite-extracted data to provide the links. The trial court overruled Appellant's motion.

## C. Analysis

The evidence viewed in the light most favorable to the verdict shows there was no dispute Appellant owned the phone and the phone contained numerous images of child pornography and data showing internet searches of websites with such images. We conclude that the circumstantial evidence was probative of whether Appellant possessed the child pornography found on his phone. *See Hooper*, 214 S.W.3d at 13; Tex. Penal Code Ann. § 1.07(39) (defining "possession"). Detective Saenz testified that he confirmed the images of child pornography had been downloaded from November 16, 2016, through April 4, 2017. Detective Saenz also stated that other non-illegal images were on the phone between those same dates. Although Appellant contended "other people" used his phone and denied having possession of his phone when the images were downloaded, he admitted he used the phone both before and after the date the images were downloaded. From this evidence, the jury could have inferred Appellant downloaded the child pornography images to his cell phone. Based on the combined force of the circumstantial evidence when viewed in the light most favorable to the verdict, such an inference was reasonable. *See Orellana*, 381 S.W.3d at 653; *Nisbett*, 552 S.W.3d at 262. Furthermore, although Appellant denied knowledge of the images and internet searches, it was the jury's prerogative to not believe him. *See Covington v. State*, No. 08-23-00176-CR, 2024 WL 1599211, at *4 (Tex. App.—El Paso Apr. 12, 2024, pet. ref'd) (mem. op., not designated for publication) (jury is the sole judge of witnesses' credibility and weight to be given their testimony).

We conclude the evidence was legally sufficient to support the jury's verdict; therefore, the trial court did not err in denying Appellant's motion for a directed verdict. Accordingly, we overrule his first issue.

## V.   JURY'S REQUEST TO VIEW CERTAIN TEXT MESSAGES

During the jury's deliberations, the jury requested text messages and image downloads with timestamps between April 4 and April 6, 2017. In an attempt to comply with the request, the State downloaded onto a laptop computer Appellant's text messages and created a 1,620-page PDF that included all text messages ever sent by Appellant "from the beginning of time," but did not contain images of child pornography. The State explained that extracting only the April 4 and April 6, 2017 texts would take one or more days. Appellant's only objection at trial was that providing all the text messages exceeded the scope of the jury's request. After confirming the text messages had all been admitted into evidence and overruling Appellant's objection, the trial court sent the computer containing the text messages to the jury.

In his fourth issue on appeal, Appellant asserts the trial court improperly exceeded the scope of the jury's inquiry and his conviction should be reversed. He asserts, without explanation, that the trial court's error bolstered the State's case against him. In support of his argument, Appellant relies on Texas Code of Criminal Procedure Article 36.28 and *Pugh v. State*, 376 S.W.2d 760 (Tex. Crim. App. 1964).

Article 36.28 states:

In the trial of a criminal case in a court of record, if the jury disagree as to the statement of any witness they may, upon applying to the court, have read to them from the court reporter's notes that part of such witness testimony or the particular point in dispute, and no other; but if there be no such reporter, or if his notes cannot be read to the jury, the court may cause such witness to be again brought upon the stand and the judge shall direct him to repeat his testimony as to the point in dispute, and no other, as nearly as he can in the language used on the trial.

15

Tex. Code Crim. Proc. Ann. art. 36.28. Article 36.28 applies when there is a dispute about a witness's testimony. *See Stredic v. State*, 663 S.W.3d 646, 654–55 (Tex. Crim. App. 2022) ("Article 36.28 dictates when testimony can be repeated to the jury (if there is a dispute), what testimony can be repeated to the jury (the testimony in dispute), and how testimony can be repeated to a jury (by reading it back, or if that is not possible, by having the witness repeat the testimony).").

In *Pugh*, the jury asked for the time and date the defendant was picked up by a highway patrolman. 376 S.W.2d at 761. Though the date shown by the evidence was stipulated to, the trial court, on its own volition and over the appellant's objection, recalled the jury and had the court reporter read to them the patrolman's testimony. *Id.* The Court of Criminal Appeals determined that the former version of Article 36.28 controlled and limited the reading of testimony to the jury during deliberations; therefore, the trial court's action was not authorized and tended to bolster the State's case. *Id.* The Court concluded the appellant was deprived of a fair and impartial trial, reversed the judgment, and remanded the cause. *Id.*

We conclude that neither Article 36.28 nor *Pugh* apply here because the evidence requested by and given to the jury was not testimony. Instead, it was text messages, all of which had previously been admitted into evidence. Accordingly, we apply Article 36.25, which applies to written evidence.

Article 36.25 requires the trial court to "furnish[] to the jury upon its request any exhibits admitted as evidence in the case." Tex. Code Crim. Proc. Ann. art. 36.25. "Compliance with this statute is mandatory, and a trial court's failure to do so constitutes harmful error." *Pena v. State*, No. 08-16-00236-CR, 2019 WL 1374152, at *12 (Tex. App.—El Paso Mar. 27, 2019, pet. ref'd) (mem. op., not designated for publication) (trial court did not abuse its discretion by ordering bailiff

16

to briefly display requested evidence in deliberation room). However, "[a]lthough it is not in strict compliance with art. 36.25 for the trial court to submit evidence to the jury without request, to do so does not amount to reversible error." *Saenz v. State*, 879 S.W.2d 301, 306 (Tex. App.—Corpus Christi-Edinburg 1994, no pet.).

In this case, the alleged error focuses on the trial court's decision to send back *all* the text messages. At trial, Appellant's only objection was that sending all the text messages to the jury exceeded the scope of their request. Even if we were to assume that the trial court erred by sending back all the text messages, any such error did not result in reversible harm. *See* Tex R. App. P. 44.2(b) ("Any other error, defect, irregularity, or variance that does not affect substantial rights must be disregarded.").

At trial, Appellant did not contend that sending all the text messages to the jury would harm him. On appeal, he contends, without explanation, that sending all the text messages bolstered the State's case. *See Cohn v. State*, 849 S.W.2d 817, 819–20 (Tex. Crim. App. 1993) (en banc) (bolstering is "any evidence the sole purpose of which is to convince the factfinder that a particular witness or source of evidence is worthy of credit, without substantively contributing 'to make the existence of [a] fact that is of consequence to the determination of the action more or less probable than it would be without the evidence.'") (quoting Tex. R. Evid. 401)).

We conclude that nothing in the record supports Appellant's contention that the jury used the text messages for an improper purpose. *See Smith v. State*, 232 S.W. 497, 503 (1921) ("Unless it is made to appear that the articles which are in evidence, and taken to the jury room, were used by the jury in any different manner than accorded with the testimony, or that some new fact hurtful to appellant was thereby discovered, the matter will not be revised on appeal."); *Jabben v. State*, No. 02-23-00210-CR, 2024 WL 3897994, at *7–8 (Tex. App.—Fort Worth Aug. 22, 2024, no pet.)

17

(mem. op., not designated for publication) (holding no reversible error even if error is assumed where the appellant objected at trial and argued that providing all the exhibits in response to jury asking about the manufacture date of guns constituted a comment on the age of the guns). On this record, we cannot conclude the alleged error affected Appellant's substantial rights.

Therefore, we overrule Appellant's fourth issue.

## VI.   FINES AND COURT COSTS

The trial court assessed a $10,000 fine on each count as well as $600 in court costs on each count.[10]  In his fifth and final issue, Appellant asserts the trial erred by failing to conduct an on-the-record hearing regarding his ability to pay in violation of Texas Code of Criminal Procedure Article 42.15. He contends the judgment is void because the imposition of fines and court costs without the statutorily required hearing is a defect that cannot be cured.

Under Article 42.15, "during or immediately after imposing a sentence in a case in which the defendant entered a plea in open court[,] a court shall inquire on the record whether the defendant has sufficient resources or income to immediately pay all or part of the fine and costs." Tex. Code Crim. Proc. Ann. art. 42.15(a–1). "If the court determines that the defendant does not have sufficient resources or income to immediately pay all or part of the fine and costs, the court shall determine whether the fine and costs should be[,]" among other options, "required to be paid at some later date[.]" *Id.* art 42.15(a–1)(1).

Here, at the conclusion of the sentencing hearing, the trial court stated it would impose a $10,000 fine on each count. The court did not conduct an Article 42.15 hearing before doing so, but Appellant did not request such a hearing or object to the lack of a hearing. Recently, the Court

---

[10]  The Bill of Cost specifies that Appellant would only have to pay $10,600 in total.

of Criminal Appeals held that the right to an Article 42.15 hearing is a forfeitable right. *See Cruz v. State*, No. PD-0628-23, 2024 WL 4031525, at *3, (Tex. Crim. App. Sept. 4, 2024). The *Cruz* Court explained:

> An ability-to-pay inquiry is not fundamental to the adjudicatory system; it is a post-trial procedure that has nothing to do with adjudication; it does not ensure a jury, a fair trial, a correctly informed sentencing judge, or a defendant's ability to understand the proceedings against him. It does not implicate "the integrity of judicial sentencing proceedings" or "the criminal adjudicatory process[.]" [citation omitted] Requesting it would not likely be futile, and its post-trial timing forecloses the possibility that asking for it would expose the jury to the judge's bias. [citation omitted] Requiring an objection to enforce it would not undermine "the public's perception of the fairness of our judicial system" or engender "suspicions" about the system's "fairness and accuracy." [citation omitted] In short, an ability-to-pay inquiry made during or right after sentencing bears no consequence to the adjudicatory process.

*Id.* We are bound by the Court of Criminal Appeals' holding in *Cruz. See Martell v. State*, 656 S.W.3d 647, 652 (Tex. App.—El Paso 2022, pet. ref'd). Therefore, because Appellant forfeited his right to an ability-to-pay inquiry on the record by failing to request a hearing or object to the lack of a hearing, he failed to preserve error. *See Cruz*, 2024 WL 4031525, at *3; Tex. R. App. P. 33.1(a).

The *Cruz* Court also held that "missing out on [a hearing] would not doom a defendant to undue hardship" because "[t]he same relief from fine and costs offered by Article 42.15(a–1)(1)–(4)—delayed or periodic payments, community service, and/or fine-and-costs waiver—is available forever after sentencing." *Cruz*, 2024 WL 4031525, at *3. In this case, each judgment contained the same language: "[t]he Court ORDERS Defendant to pay all fines, court costs, and restitution as indicated above" and "[t]he Court ORDERS that upon release from confinement, Defendant proceed immediately to the Bexar County District Clerk. Once there, the Court ORDERS Defendant to pay, or make arrangements to pay, any remaining unpaid fines, court costs,

19

and restitution as ordered by the Court above." Thus, consistent with Article 42.15(a–1)(1), the final judgments included the assessment of fines and court costs, but allowed Appellant to pay any remaining unpaid fines, court costs, and restitution upon his release from confinement.[11]

Upon his release, if Appellant is unable to pay the fines and court costs, he can seek relief from the trial court at that time. *See Sloan v. State*, 676 S.W.3d 240, 242 n.2 (Tex. App.—Tyler 2023, no pet.). If he notifies the court that he has difficulty paying fines and costs in compliance with the judgment, "the court shall hold a hearing to determine whether that portion of the judgment imposes an undue hardship on the defendant." Tex. Code Crim. Proc. Ann. art. 43.035(a). "If the court determines at the hearing under Subsection (a) that the portion of the judgment regarding fines and costs imposes an undue hardship on the defendant, the court shall consider whether fines and costs should be satisfied through one or more methods listed under Article 42.15(a–1)." *Id.* art. 43.035(c). The trial court retains jurisdiction for the purposes of making such a determination. *See id*. art. 43.035(e). Appellant does not assert the trial court's determination that he should pay fines and court costs at some later date amounted to an abuse of discretion.

We overrule Appellant's fifth issue on appeal.

## VII. CONCLUSION

For the reasons stated above, we affirm the trial court's judgment.

LISA J. SOTO, Justice

---

[11] The Bill of Cost specifies that Appellant must pay "within . . . 120 days of [his] release from TDC."

20

October 29, 2024

Before Alley, C.J., Palafox and Soto, JJ.

(Do Not Publish)